UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 3:11-CR-0083-15 |
| v. | ) | Judge Haynes/Brown |
| | ) | |
| CARLOS ANTWAN FLETCHER, | ) | |
| | ) | |
| Defendant | ) | |

**O R D E R**

Judge Haynes has referred the Plaintiff's motion for a review of the order of detention (Docket Entry 234) to the undersigned (Docket Entry 240).

A hearing was held in this matter on March 15, 2012. At the hearing the Defendant called his mother, who is a 30-year employee with the Corps of Engineers and has lived in her current residence since 1996. Ms. Fletcher is willing to put her house up as a bond to secure the Defendant's presence and she further offered to have the house secure all conditions of release, not just failure to appear.

She said the Defendant had a number of health issues to include blood clots, asthma, nerves, knee problems. In general, he had a number of cardiac and orthopaedic problems. She contended that a number of tests had been recommended for him, but not carried out by the jail.

It is her understanding that the last physician he was seen by was not happy that the Defendant had appeared at his office in an orange jump suit, as this caused concerns among his regular patients. The Government, on cross-examination, secured

information from Ms. Fletcher that Defendant had received treatment for a host of problems and that he was getting medication for his knee, clot, and heart problems.  Ms. Fletcher believed that she could have her son placed on her health care insurance plan, which she has through her employment with the United States.

Given the fact that the Defendant is approximately 30 years of age, the Magistrate Judge does not believe that it is possible for the Defendant to be placed on his mother's health care, and given his pre-existing conditions it would be virtually impossible to obtain insurance.

Ms. Douglas testified that she was a 40-year resident of Nashville and lived with her mother.  Her mother has significant health problems and undergoes dialysis several times a week.  She has been employed for the last 17 years with a single company.  Her niece has a child by Defendant.  She advised that she would act as a third-party custodian.  She was aware that the Defendant had been charged with threatening her niece with a gun and that he was charged with involvement with guns and drugs in the present case.

Ms. Douglas was not aware of what Defendant's employment was around the time of his arrest.

Mr. Reynold testified that he had known the Defendant for a number of years.  He is employed as a guidance counselor at a group home.  He stated that he owned a .223 rifle, which he purchased in the summer of 2007.  He stated that he had left this with the Defendant since he had undergone financial distress and had lost his home and was unable to store the rifle at the group house where he worked.

Mr. Reynold advised that he knew the Defendant had a gun permit and could keep the weapon for him. He said that he had never seen the Defendant with drugs.

The Defendant testified for the sole purpose of providing information about his medical treatment. He testified that since his incarceration in April 2011 he did not believe that he had received appropriate medical treatment. He said that Dr. Mathews[1] had indicated he needed knee replacement, and two other doctors had advised that he needed heart surgery, along with an MRI and a CAT scan. He said his regular doctor (Dr. Gekas) had seen him regularly before his arrest. He said that he is concerned that he was being given Ibuprofen, which was counter-indicated when also given Coumadin.

He stated by before he was arrested he had been advised that he possibly had a hole in his heart. However, he admitted that a couple of months before he had received tests, and they did not indicate this problem.

The Government called the case agent who said that they had checked on the registration of one of the weapons and found that it was registered to a former girlfriend of the Defendant who apparently now resides in California. The girlfriend had earlier told the agent that she knew nothing about the weapon. On cross-examination, the Defendant's counsel pointed out that the Government had been very slow to run traces of the weapons and that the Government had yet to seek a superceding indictment for either

---

[1]This doctor's name is spelled three different ways in the records.

the weapons, several pounds of marijuana, or for 2,000 pills, believed to be Ecstasy, which were seized during the course of the arrest and search. The Defendant allegedly made a statement to officer that the Ecstasy was his.

The Magistrate Judge is concerned that the Government, while indicating an intention to secure a superceding indictment, has moved so slowly in this matter. Delay, however, by itself, does not require release from pretrial detention. However, delay may at some point become a factor.

The Defendant's medical records were obtained from his place of incarceration and, at the request of the Magistrate Judge, reviewed by W. Burton Putman, Supervisory U.S. Probation Officer, who prepared a report dated March 21, 2012. The medical records and Mr. Putman's report will be **attached as a sealed exhibit to this order**.

A review of the records by Mr. Putman and the Magistrate Judge, does not support the Defendant's claim of inadequate treatment. The Defendant clearly has gone through a litany of complaints. However, it appears that the United States Marshal's service has responded to each of these and it is particularly telling that the Defendant's conduct belies the severity of many of his complaints. After complaining of knee problems and obtaining a lower bunk, to be observed on two occasions jumping from an upper bunk, renders this complaint suspect. It also appears that the Defendant, when offered the opportunity to go to sick call, has been less than cooperative. It appears additionally that the Defendant is extremely reluctant to take prescribed medication and

has attempted to avoid taking it on several occasions. Failure to take Coumadin for blood clots is certainly risky behavior on his part.

The Magistrate Judge has carefully considered the issue of pretrial release and remains satisfied that the Defendant does not constitute a serious risk of flight. There are conditions which would reasonably assure the Court of the Defendant's presence.

The Magistrate Judge, however, remains unconvinced that there are conditions which will reasonably protect the community from the danger the Defendant poses. The Magistrate Judge previously summarized his reasons for detention on April 27, 2011 (Docket Entry 86). The Magistrate Judge has reviewed Judge Haynes' order affirming that decision (Docket Entry 202), as well as Judge Haynes' order referring this matter to the undersigned to consider new allegations (Docket Entry 240).

The Defendant's medical record, which was previously summarized, shows the Defendant has received appropriate medical treatment and has, in a number of incidences, failed to cooperate with his treatment. The Magistrate Judge does not believe that these issues warrant a change of status.

None of the third-party custodians would provide 24-hour surveillance of the Defendant. The Defendant committed a number of offenses while living with his mother. The Magistrate Judge has also considered the conditions that Pretrial Services suggested **IF** the Defendant was released, dated March 7, 2012. The Magistrate Judge does not believe that the adoption of these conditions would

5

adequately protect the community, given the nature of the offense and the nature of the Defendant's criminal background, as well as the nature of the charges facing the Defendant.

Accordingly, the motion to change the present conditions of release is **DENIED**.

It is so **ORDERED**.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge